IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MACK DAVIS, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:11-cv-00047 |
| | § | |
| WELLS FARGO BANK, N.A., et al., | § | |
| | § | |
| *Defendants*. | § | |

### DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

Respectfully submitted,

/s/ Robert T. Mowrey by permission M.H.D.

**Robert T. Mowrey (Attorney In Charge)**
rmowrey@lockelord.com
  State Bar No. 14607500
  SDT Bar No. 9529
**Thomas G. Yoxall (Of Counsel)**
tgyoxall@lockelord.com
  State Bar No. 00785304
  SDT Bar No. 16664
**Johnathan E. Collins (Of Counsel)**
jcollins@lockelord.com
  State Bar No. 24049522
  SDT Bar No. 1002049
**Matthew H. Davis (Of Counsel)**
mdavis@lockelord.com
  State Bar No. 24069580
  SDT Bar No. 1124612
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
(214) 740-8000
(214) 740-8800 (Facsimile)

-and-

**Ralph F. Meyer (Of Counsel)**
  State Bar No. 13994300
  SDT Bar No. 2831
**Ronald W. Dennis (Of Counsel)**
  State Bar No. 24036469
  SDT Bar No. 33889
ROYSTON RAYZOR VICKERY & WILLIAMS, LLP
Frost Bank Plaza
802 N. Carancahua, Suite 1300
Corpus Christi, Texas 78401
(361) 884-8808
(361) 884-7261 (Facsimile)

**ATTORNEYS   FOR   DEFENDANT   WELLS
FARGO BANK, N.A.**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    SUMMARY OF CLAIMS.....................................................................................2

III.   ARGUMENTS AND AUTHORITIES...................................................................3

    A.    Legal Standards Applicable to Motions to Dismiss..................................3

    B.    The Alleged "Scheme" Underlying Each of Plaintiffs' Claims is Implausible on its Face ...................................................................................5

    C.    Plaintiffs Who Had No Interaction With Wells Fargo Cannot State a Claim..........................................................................................................6

    D.    Plaintiffs' Tort Claims Are Barred by the Economic Loss Rule .............6

    E.    Plaintiffs' FDCPA Claim Fails ...............................................................7

        1.    Plaintiffs inadequately allege that Wells Fargo is a "debt collector."..........................................................................................8

        2.    Plaintiffs were not the objects of debt collection activity...........9

    F.    Plaintiffs Fail to State a TDCA Claim ...................................................10

    G.    Plaintiffs Fail to State a Claim Under the DTPA....................................12

        1.    Plaintiffs are not "consumers" under the DTPA.......................13

        2.    Plaintiffs fail to allege specific wrongful acts under the DTPA. ..............14

    H.    Plaintiffs' Fraud by Nondisclosure Claim Fails.....................................15

        1.    Plaintiffs' allegations fail to satisfy Rule 9(b)'s heightened pleading requirements..................................................................15

        2.    Wells Fargo does not owe Plaintiffs a duty to disclose as a matter of law. .....................................................................................16

        3.    Plaintiffs do not adequately allege reliance. .............................17

    I.    Plaintiffs' Statutory Fraud Claim Fails ..................................................17

        1.    Plaintiffs' statutory fraud claim does not satisfy the Rule 9(b) pleading standard. .................................................................18

        2.    Section 27.01 does not apply to this case. .................................18

        3.    Plaintiffs do not adequately allege detrimental reliance on any alleged misrepresentation...................................................19

    J.    Plaintiffs Fail to State a Claim for Negligence ......................................19

    K.    Plaintiffs Fail to State a Claim for Wrongful Foreclosure.....................20

    L.    Plaintiffs Fail to State a Claim for Unreasonable Collection Efforts....................22

    M.    Plaintiffs Fail to Establish a Usury Claim under the NBA ....................24

**N.**    Plaintiffs Fail to Establish a Claim for Negligent Misrepresentation ...................24

**O.**    Plaintiffs Fail to State a Claim for Gross Negligence............................................25

**P.**    Plaintiffs Fail to State a Claim for Unjust Enrichment ..........................................26

**Q.**    Plaintiffs Fail to State a Claim for Conspiracy ......................................................27

**R.**    Plaintiffs Fail to State a Claim for Aiding and Abetting .......................................28

**S.**    To the Extent Plaintiffs Attempt to Regulate Wells Fargo's Banking Practices Through State Common Law, Plaintiffs' Claims are Barred by the National Bank Act.............................................................................................28

**T.**    To the Extent Plaintiffs Attempt to Use State Law Claims to Recover "Loss of Credit Damages," Their Claims are Preempted by the Fair Credit Reporting Act.......................................................................................................30

**U.**    Plaintiffs Fail to Adequately Allege Damages.......................................................31

**IV.**    CONCLUSION...................................................................................................................32

## TABLE OF AUTHORITIES

CASES

*Am. Tobacco Co. v. Grinnell,*
   951 S.W.2d 420 (Tex. 1997)..........................................................................16, 17

*Amstadt v. U.S. Brass Corp.,*
   919 S.W.2d 644 (Tex. 1996)......................................................................13, 14, 31

*Anderson v. CitiMortgage, Inc.,*
   No. 4:10-cv-398, 2011 WL 1113494 (E.D. Tex. March 24, 2011) .........................................8

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009).....................................3, 4, 5, 6, 14, 17, 21, 22, 24, 28, 31

*Ayers v. Aurora Loan Servs., LLC,*
   787 F. Supp. 2d 451 (E.D. Tex. 2011)..................................................................31

*B.F. Jackson, Inc. v. CoStar Realty Info., Inc.,*
   No. 4:08-CV-3244, 2009 WL 1812922 (S.D. Tex. May 20, 2009)........................................22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................4, 28

*Biggers v. BAC Home Loans Servicing, LP,*
   767 F. Supp. 2d 725 (N.D. Tex. 2011) ............................................................20, 25

*Bittinger v. Wells Fargo Bank N.A.,*
   744 F. Supp. 2d 619 (S.D. Tex. 2010) ................................................................10

*Blackburn v. City of Marshall,*
   42 F.3d 925 (5th Cir. 1995) ...........................................................................4

*Bray v. Cadle Co.,*
   No. 4:09-CV-663, 2010 WL 4053794 (S.D. Tex. Oct. 14, 2010) .........................................23

*Brown v. Morris,*
   243 F. App'x 31 (5th Cir. 2007) ......................................................................9

*Brown v. Oaklawn Bank,*
   718 S.W.2d 678 (Tex. 1986)............................................................................10

*Broyles v. Chase Home Fin.,*
   No. 3:10-cv-2256-G, 2011 WL 1428904 (N.D. Tex. April 13, 2011)......................................14

*Burleson State Bank v. Plunkett,*
   27 S.W.3d 605 (Tex. App.—Waco 2000, pet. denied)......................................................18

*Burnette v. Wells Fargo Bank, N.A.*,
No. 4:09-cv-370, 2010 WL 1026968 (E.D. Tex. Feb. 16, 2010).......................................24, 31

*Collier v. Wells Fargo Home Mortgage*,
No. 7:04-CV-086-K, 2006 WL 1464170 (N.D. Tex. May 26, 2006).......................................17

*Dabney v. Chase Manhattan Mtg.*,
No. 3:10-CV-00259-N, 2010 WL 4502155 (N.D. Tex. Oct. 4, 2010) .....................................8

*Dekelaita v. BP Amoco Chem. Co.*,
No. G-07-0131, 2008 WL 2964376 (S.D. Tex. Jul. 30, 2008) ................................................25

*Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*,
299 S.W.3d 374 (Tex. App.—Tyler 2009, pet. denied)...........................................................7

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2008) ....................................................................................................18

*EMC Mortgage Corp. v. Jones*,
252 S.W.3d 857 (Tex. App.—Dallas 2008, no pet.)..................................................................22

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001).......................................................................................................28

*Escuadra v. Geovera Specialty Ins. Co.*,
739 F. Supp. 2d 967 (E.D. Tex. 2010) .......................................................................................5

*Essex Ins. Co. v. Blount, Inc.*,
72 F. Supp. 2d 722 (E.D. Tex. 1999).........................................................................................7

*Fed. Deposit Ins. Corp. v. Coleman*,
795 S.W.2d 706 (Tex. 1990)......................................................................................................20

*Fillion v. David Silvers Co.*,
709 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ...........................21

*Fix v. Flagstar Bank, FSB*,
242 S.W.3d 147 (Tex. App.—Fort Worth 2007, pet. denied) .................................................13

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ....................................................................................................15

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000).................................................................................................26, 27

*Grant-Brooks v. WMC Mortgage Corp.*,
No. 3:02-cv-2455-AH, 2003 WL 23119157 (N.D. Tex. Dec. 9, 2003)...................................14

*Greenway Bank & Trust of Houston v. Smith,*
    679 S.W.2d 592 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ............................18

*Grella v. Berry,*
    647 S.W.2d 15 (Tex. App.—Houston [14th Dist.] 1982, no writ) ..........................................21

*Gui Zhi v. Bell Helicopter Textron, Inc.,*
    No. 4:97-CV-407-Y, 1997 WL 786494 (N.D. Tex. Dec. 16, 1997)..........................................7

*Hall v. Stephenson,*
    919 S.W.2d 454 (Tex. App.—Fort Worth 1996, writ denied)................................................25

*Heldenfels Bros., Inc. v. City of Corpus Christi,*
    832 S.W.2d 39 (Tex. 1992)................................................................................................26, 27

*Henry Schein, Inc. v. Stromboe,*
    102 S.W.3d 675 (Tex. 2002)..................................................................................................25

*Herrmann Holdings Ltd. v. Lucent Techs., Inc.,*
    302 F.3d 552 (5th Cir. 2002) ................................................................................................15

*Jackson Law Office, P.C. v. Chappell,*
    37 S.W.3d 15 (Tex. App.—Tyler 2000, pet. denied)............................................................31

*Jim Walter Homes, Inc. v. Reed,*
    711 S.W.2d 617 (Tex. 1986)....................................................................................................6

*Kan v. OneWest Bank, FSB,*
    No. A-11-CA-381-SS, 2011 WL 5419693 (W.D. Tex. Oct. 27, 2011)..................................12

*Keith v. Stoelting, Inc.,*
    915 F.2d 996 (5th Cir. 1990) ................................................................................................16

*La Sara Grain Co. v. First Nat'l Bank of Mercedes,*
    673 S.W.2d 558 (Tex. 1984)..................................................................................................13

*Lambert v. First Nat'l Bank of Bowie,*
    993 S.W.2d 833 (Tex. App.—Fort Worth 1999, pet. denied) ..........................................21, 22

*Lechner v. CitiMortgage, Inc.,*
    No. 4:09-CV-302-Y, 2009 WL 2356142 (ND. Tex. July 29, 2009)................................15, 18

*Lee Lewis Constr., Inc. v. Harrison,*
    70 S.W.3d 778 (Tex. 2001)....................................................................................................26

*Lesikar v. Rappeport,*
    33 S.W.3d 282 (Tex. App.—Texarkana 2000, pet. denied) ..................................................27

*Martinez v. Wells Fargo Home Mortgage, Inc.*,
    598 F.3d 549 (9th Cir. 2010) ...................................................................28, 29, 30

*Massey v. Armco Steel Co.*,
    652 S.W.2d 932 (Tex. 1983).....................................................................27, 28, 31

*Melody Home Mfg. Co. v. Barnes*,
    741 S.W.2d 349 (Tex. 1987)...............................................................................13

*Mitchell v. Chase Home Fin. LLC*,
    No. 3:06-CV-2099-K, 2008 WL 623395 (N.D. Tex. Mar. 4, 2008)................................22, 23

*Motten v. Chase Home Fin.*,
    No. H-10-4994, 2011 WL 2566092 (S.D. Tex. June 28, 2011)...............................................20

*Mowbray v. Avery*,
    76 S.W.3d 663 (Tex. App.—Corpus Christi 2002, pet. denied).......................................26, 27

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
    288 S.W.3d 401 (Tex. 2009)...........................................................................19, 31

*Narvaez v. Wilshire Credit Corp.*,
    757 F. Supp. 2d 621 (N.D. Tex. 2010) ...............................................................................23

*Neitzke v. Williams*,
    490 U.S. 319 (1989)...............................................................................................5

*Nolan v. Bettis*,
    577 S.W.2d 551 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).......................................18

*Parkway Co. v. Woodruff*,
    901 S.W.2d 434 (Tex. 1995)...............................................................................32

*Perry v. Stewart Title Co.*,
    756 F.2d 1197 (5th Cir. 1985) ...............................................................................8

*Plotkin v. IP Axess, Inc.*,
    407 F.3d 690 (5th Cir. 2005) ...........................................................................15, 18

*Pullins v. Credit Exch. of Dallas, Inc.*,
    538 S.W.2d 681 (Tex. Civ. App.—Waco 1976, no writ) .......................................................23

*Reynolds v. Sw. Bell Tel., L.P.*,
    No. 2-05-356-CV, 2006 WL 1791606 (Tex. App.—Fort Worth June 29, 2006, pet. denied)...............................................................................................11

*Rico v. JPMorgan Chase Bank N.A.*,
    No. 3:10-CV-1643-L, 2011 WL 1792854 (N.D. Tex. May 10, 2011) ....................................16

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
  435 S.W.2d 854 (Tex. 1969)....................................................................................27

*Shushany v. Allwaste, Inc.*,
  992 F.2d 517 (5th Cir. 1993) ...................................................................15, 16, 18

*Steele v. Green Tree Servicing, LLC*,
  No. 3:09-CV-0603-D, 2010 WL 3565415 (N.D. Tex. Sept. 7, 2010) ....................23

*Stewart Glass & Mirror, Inc. v. U.S.A. Glass, Inc.*,
  940 F. Supp. 1026 (E.D. Tex. 1996)..........................................................................4

*Stewart v. Alonzo*,
  No. C-08-347, 2009 WL 174938 (S.D. Tex. Jan. 26, 2009)....................................8

*Sw. Bell Tel. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991)................................................................................6, 7

*Sweet v. Wachovia Bank & Trust Co.*,
  No. 3:03-cv-1212-R, 2004 WL 1238180 (N.D. Tex. Feb. 26, 2004) ....................10

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) ................................................................................15

*Thomson v. Espey Huston & Assocs., Inc.*,
  899 S.W.2d 415 (Tex. App.—Austin 1995, no writ)...............................................7

*THPD, Inc. v. Cont'l Imps., Inc.*,
  260 S.W.3d 593 (Tex. App.—Austin 2008, no pet.) ............................................20

*Thrash v. Ocwen Loan Servicing, LLC (In re Thrash)*,
  433 B.R. 585 (Bankr. N.D. Tex. 2010)..................................................................20

*Tilton v. Marshall*,
  925 S.W.2d 672 (Tex. 1996)..................................................................................27

*Vick v. NCO Fin. Sys., Inc.*,
  No. 2:09-CV-114-TJW-CE, 2011 WL 1193027 (E.D. Tex. Mar. 7, 2011)..............8

*Watters v. Wachovia Bank, N.A.*,
  550 U.S. 1 (2007)..............................................................................................29, 30

*Wells Fargo Bank of Tex. N.A. v. James*,
  321 F.3d 488 (5th Cir. 2003) ..........................................................................28, 29

*White v. BAC Home Loans Servicing, LP*,
  No. 3:09-CV-2484-G, 2010 WL 4352711 (N.D. Tex. Nov. 2, 2010) ..............21, 22

*Wier v. Countrywide Bank, N.A.*,
No. 10-CV-11468, 2011 WL 1256944 (E.D. Mich. March 31, 2011) ........................28, 29, 30

*Williams v. WMX Techs., Inc.*,
112 F.3d 175 (5th Cir.), *cert. denied*, 118 S. Ct. 412 (1997)...................................................15

## RULES, STATUTES, AND CONSTITUTION

12 U.S.C. §§ 21 *et seq.* ............................................................................................................ 28

12 U.S.C. § 24 (Seventh) ......................................................................................................... 28

12 U.S.C. § 93a........................................................................................................................ 29

FED. R. CIV. P. 8(a)(2) .............................................................................................................. 3

FED. R. CIV. P. 9(b) ................................................................................................................. 15

TEX. BUS. & COM. CODE § 17.41 *et seq.* ......................................................................... 12, 14

TEX. BUS. & COM. CODE § 17.45(4) ...................................................................................... 13

TEX. BUS. & COM. CODE § 17.50(a) ...................................................................................... 13

TEX. BUS. & COM. CODE § 17.50(a)(3) .................................................................................. 14

TEX. BUS. & COM. CODE § 27.01(1)(B) ................................................................................. 19

TEX. BUS. & COM. CODE § 27.01(2)(D)..................................................................................19

TEX. FIN. CODE §§ 392.001-392.404 ..................................................................................... 10

TEX. FIN. CODE § 392.304(a)(8) ............................................................................................ 11

TEX. FIN. CODE § 392.304(a)(19)............................................................................................11

TEX. FIN. CODE § 392.403(a)(2) ............................................................................................ 12

TEX. PROP. CODE § 51.002(a) ..................................................................................................5

## OTHER AUTHORITIES

12 C.F.R. § 34.4(a)(4)............................................................................................................. 30

12 C.F.R. § 34.4(a)(10)........................................................................................................... 30

12 C.F.R. § 34.4(b) ................................................................................................................. 30

12 C.F.R. § 225.62(g) .......................................................................................... 9

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), incorrectly named as Wachovia Bank, N.A. ("Wachovia"), Wachovia Settlement Services, LLC ("Wachovia Settlement Services"), Greenlink, LLC ("Greenlink"), Wells Fargo Home Mortgage, Inc. ("WFHM"), and America's Servicing Company ("ASC") (collectively, the "Defendants"),[1] files this Motion to Dismiss and Brief in Support (the "Motion"), and respectfully shows the Court the following:

## I.    <u>INTRODUCTION</u>

This lawsuit arises out of the foreclosure, or threatened foreclosure, of properties located in The Sanctuary at Costa Grande ("The Sanctuary").  A variety of out-of-state Plaintiffs purchased investment properties in The Sanctuary, but their investments did not go as planned because property values decreased.  Rather than accepting the fact that they purchased their properties shortly before the real estate downturn, Plaintiffs have concocted a wide-reaching "scheme" in an attempt to blame Wells Fargo for their failed investments.

Although Plaintiffs admit defaulting on their loans, they allege that Wells Fargo is to blame for their defaults because it engaged in a tax manipulation scheme through which it allegedly encouraged appraisers to drive down property values.  According to Plaintiffs, the reduced property values allowed Wells Fargo to realize significant losses upon foreclosure, and in turn, significant tax savings under section 382 of the Internal Revenue Code.  However, Plaintiffs' allegations are implausible on their face.  Wells Fargo cannot dictate the price at which properties are sold at _public_ foreclosure sales, so Wells Fargo has no control over a key aspect of the "scheme."  Plaintiffs also wholly ignore a much more plausible explanation for the drop in property values—the recent recession.

---

[1] Wells Fargo is the only entity still in existence.  Each of the other Defendants has either dissolved or is a subsidiary of Wells Fargo.

Regardless of the implausibility of Plaintiffs' alleged "scheme," Plaintiffs fail to explain how such a "scheme" prevented them from making payments on their loans or how such a "scheme" resulted in them defaulting on their loans, and (aside from various conclusory allegations) Plaintiffs fail to connect the alleged "scheme" to any of their causes of action.

Simply put, the First Amended Complaint ("FAC") is riddled with numerous conclusory statements and fails to identify specific acts of any defendant giving rise to a viable cause of action. Instead, Plaintiffs allege a plethora of unsupported causes of action. As such, each of Plaintiffs' claims should be dismissed.

## II.     SUMMARY OF CLAIMS

According to the allegations in the FAC,[2] Wells Fargo perpetrated a tax manipulation scheme that caused a reduction in Plaintiffs' property values. *See generally* FAC. Plaintiffs purchased properties in The Sanctuary through the use of three and five year interest only loans that required balloon payments at the end of the loan term. *See id.* at ¶ 40. Plaintiffs allege that Wells Fargo refused to refinance their loans when the balloon payments became due. *Id.* However, Plaintiffs offer no basis for their belief that they were entitled to refinance and admit they defaulted on their loans.[3] *See id.* When Plaintiffs defaulted on their loans, Wells Fargo initiated foreclosure proceedings. *See, e.g., id.* at ¶ 48.

According to Plaintiffs, these foreclosure proceedings were tainted by improper appraisals. *See id.* at ¶¶ 43-47. Plaintiffs allege that Wells Fargo encouraged appraisers to value properties below their actual market value so that Wells Fargo could take advantage of IRS Notice 2008-83 (the "Notice"). *See id.* The Notice permitted Wells Fargo to take unlimited

---

[2] Although the allegations in the FAC must be taken as true for the purposes of this Motion, Wells Fargo reserves the right to challenge the factual allegations in the FAC at the appropriate time.

[3] Plaintiffs also suggest that Wells Fargo's alleged scheme "forced many lot owners to default," *see id.* at ¶ 42, but, even assuming the existence of a "scheme," Plaintiffs fail to explain how reduced property values—and not Plaintiffs' inability to pay their mortgages—resulted in any defaults.

deductions for built-in losses arising from its acquisition of Wachovia. *See id.* at ¶¶ 38-39. Plaintiffs allege that Wells Fargo implemented the scheme by telling appraisers that they "'wanted the appraisals lower' than the current true market value" and by demanding that only foreclosure sales be used as comparables in valuing the various properties. *Id.* at ¶¶ 43-44. Plaintiffs further allege that the appraisals violated the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), FDIC regulations, and Uniform Standards of Professional Appraisal Practice ("USPAP"). *Id.* at ¶¶ 63-66.

Based on these allegations, Plaintiffs assert the following causes of action: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"); (2) violations of the Texas Debt Collection Act ("TDCA"); (3) violations of the Deceptive Trade Practices Act ("DTPA"); (4) fraud by nondisclosure; (5) statutory fraud; (6) negligence; (7) wrongful foreclosure; (8) unreasonable debt collection; (9) usury under the National Banking Act ("NBA"); (10) negligent misrepresentation; (11) gross negligence; (12) unjust enrichment; (13) civil conspiracy; and (14) aiding and abetting. *Id.* at ¶¶ 69-103. Plaintiffs seek actual damages, exemplary damages, mental anguish damages, along with damages for "loss of credit," "loss of significant amounts of money," and "loss of future business dealings." *See, e.g., id.* at ¶¶ 53, 80.

As set forth herein, Plaintiffs have failed to allege facts to plausibly suggest they are entitled to the relief requested. Each of Plaintiffs' causes of action should be dismissed.

### III.    ARGUMENTS AND AUTHORITIES

#### A.    Legal Standards Applicable to Motions to Dismiss

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule of Civil Procedure 8. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy that standard, the complaint must contain sufficient

facts to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

The Supreme Court has set forth a two-pronged approach to test the sufficiency of a party's complaint. *See id.* at 1950. First, the court must distinguish between factual allegations and legal conclusions, because the latter are not entitled to a presumption of truth. *See id.* at 1949 (stating "naked assertions devoid of further factual enhancement," along with "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth) (citation and quotation marks omitted); *see also Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted). While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Second, the court determines whether the well-pleaded facts plausibly give rise to an entitlement to relief. *See Iqbal*, 129 S. Ct. at 1950. A claim has "facial plausibility" when the plaintiff pleads factual content that, when viewed in the light most favorable to the plaintiff, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. However, the plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Additionally, facial plausibility requires the plaintiff to allege facts supporting recovery under a viable legal theory. *See Stewart Glass & Mirror, Inc. v. U.S.A. Glass, Inc.*, 940 F. Supp. 1026, 1030 (E.D. Tex. 1996) (stating that a court may dismiss a complaint under Rule 12(b)(6) if

it fails to assert a cognizable legal theory or if the facts asserted are insufficient to support relief under a cognizable legal theory); *see also Escuadra v. Geovera Specialty Ins. Co.*, 739 F. Supp. 2d 967, 977 (E.D. Tex. 2010) (noting that "dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief") (citation omitted). Complaints "based on an outlandish legal theory or on a close but ultimately unavailing one" should be dismissed. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**B.   The Alleged "Scheme" Underlying Each of Plaintiffs' Claims is Implausible on its Face**

Plaintiffs devote a significant portion of the FAC to outlining the duties of appraisers under state and federal law and Wells Fargo's allegedly improper influence of appraisers in The Sanctuary. (FAC ¶¶ 31-33; 43-47). This appraisal "scheme" serves as the basis for each of Plaintiffs' substantive causes of action, but the "scheme" itself is implausible on its face. *See Iqbal*, 129 S. Ct. at 1949.

Plaintiffs allege that Wells Fargo directed appraisers to submit appraisals that were lower than the "current market value of the lots." (FAC ¶ 44). However, Plaintiffs fail to explain how these appraisals necessarily resulted in reduced property values. Indeed, common sense dictates that a property's value is reflected by its sales price at a public sale. And a foreclosure sale is by definition a public sale. TEX. PROP. CODE § 51.002(a). Plaintiffs do not allege that Wells Fargo suppressed other bids at the various foreclosure sales or that Wells Fargo prevented the public from attending any sale. Indeed, if Wells Fargo was actually utilizing under-valued appraisals as Plaintiffs claim, Plaintiffs were free to purchase the properties at foreclosure for the supposedly undervalued price then resell the properties for their "true value." That Plaintiffs failed to do so is telling. Because the "scheme" underlying each claim in the FAC is implausible on its face, the FAC should be dismissed. *Iqbal*, 129 S. Ct at 1949.

**C.      Plaintiffs Who Had No Interaction With Wells Fargo Cannot State a Claim**

Plaintiffs Christ Stewart, Carl P. Holveck, James Monroe Powell, IV, Kristin Young Powell, and Dr. Francis and Tabe Mase ("Remote Plaintiffs") admit they had no dealings with Defendants.  *See* FAC ¶¶ 58-62.  Instead, they merely allege that they have defaulted on their loans—through no fault of Wells Fargo—and that they believe their property values have been reduced.  *Id.*  These bare-bones allegations fail to allege any connection between Wells Fargo's actions and the Remote Plaintiffs' defaults and rely wholly on the conclusory assertion that their property values are lower.  *Id.*  Such allegations cannot state a claim.  *See Iqbal*, 129 S. Ct. at 1949.

**D.      Plaintiffs' Tort Claims Are Barred by the Economic Loss Rule**

Plaintiffs' claims for fraud by nondisclosure, statutory fraud, negligence, unreasonable debt collection, negligent misrepresentation, intentional infliction of emotional distress, and gross negligence fail as a matter of law because the claims are precluded by the economic loss rule.[4]

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties.  *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (stating "[w]hen the only loss or damage is to the subject of the contract, the plaintiff's action is ordinarily on the contract"); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (stating "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone").  The economic loss rule applies to real estate transactions.  *See Jim Walter Homes*, 711 S.W.2d at 618.  Further, the

---

[4] The tort claims asserted by the Remote Plaintiffs are not barred by the economic loss rule because they have no contractual relationship with Wells Fargo.  Indeed, the Remote Plaintiffs have absolutely no connection to Wells Fargo.  *See* FAC ¶¶ 58-62.  Irrespective of this fact, however, the Remote Plaintiffs' claims still fail because they lack particularity and are wholly speculative.  *See supra* part III.C.

economic loss rule expressly applies to claims for fraud by nondisclosure, statutory fraud, negligence, gross negligence, and negligent misrepresentation.  *See Essex Ins. Co. v. Blount, Inc.*, 72 F. Supp. 2d 722, 724 (E.D. Tex. 1999) (negligent misrepresentation and negligence); *Gui Zhi v. Bell Helicopter Textron, Inc.*, No. 4:97-CV-407-Y, 1997 WL 786494, at *2-3 (N.D. Tex. Dec. 16, 1997) (negligence, gross negligence, and negligent misrepresentation); *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 383 (Tex. App.—Tyler 2009, pet. denied) (negligence and gross negligence); *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 422 (Tex. App.—Austin 1995, no writ) (negligence, negligent misrepresentation, and fraud).

Here, Plaintiffs base their tort claims on actions Wells Fargo allegedly took in connection with their loans (*e.g.*, refusing to modify the loans), a relationship that is wholly governed by contract—the various notes and deeds of trust.  *See* FAC ¶¶ 48-49, 53-57 (admitting contractual relationship with Wells Fargo); *id.* at ¶ 40 (outlining Wells Fargo's alleged refusal to modify Plaintiffs' loans).  Plaintiffs contend that Wells Fargo engaged in a tax manipulation scheme that ultimately resulted in Wells Fargo foreclosing or driving down the values of the properties.  *Id.* at ¶ 42.  By initiating foreclosure after Plaintiffs defaulted on their loans, Wells Fargo exercised its contractual rights under the notes and deeds of trust.  Because the loss Plaintiffs complain of relates to the subject matter of their contracts, the economic loss rule bars their tort claims.  *See DeLanney*, 809 S.W.2d at 494-495.

**E.**     **Plaintiffs' FDCPA Claim Fails**

Plaintiffs contend Defendants violated the FDCPA by using "manipulated, low appraisals . . . in [its] attempts at collection of the subject promissory notes."  (FAC ¶ 69).  According to Plaintiffs, the use of "low" appraisals "constitutes the making of false representations regarding the character, amount, or legal status of such debt . . . ."  *Id.*  Plaintiffs also make the conclusory assertion that "Wells Fargo, the servicing companies, or their agents or assignees" are debt

collectors.  *Id.* at ¶ 70.  Noticeably absent from these conclusory allegations are any facts to support Wells Fargo's debt-collector status or an explanation of how Wells Fargo's supposed "scheme" amounts to debt collection activity directed at Plaintiffs, both of which are required elements of a FDCPA claim.  *See Stewart v. Alonzo*, No. C-08-347, 2009 WL 174938, at \*2 (S.D. Tex. Jan. 26, 2009) (outlining the elements of a cause of action under the FDCPA).  As such, Plaintiffs' FDCPA claim fails.

> 1.  <u>Plaintiffs inadequately allege that Wells Fargo is a "debt collector."</u>

Plaintiffs' FDCPA claim fails because Plaintiffs do not adequately allege that Wells Fargo (or any of the Defendants) is a "debt collector" within the meaning of the statute.  "Only parties who meet the statutory definition of debt collector are subject to civil liability under the FDCPA."  *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1193027, at \*2 (E.D. Tex. Mar. 7, 2011) (internal quotation marks omitted).  Under the FDCPA, the term debt collector "does not include the consumer's creditors, a mortgage servicing company, or assignee of a debt, as long as the debt was not in default at the time it was assigned."  *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237; *see also Dabney v. Chase Manhattan Mtg.*, No. 3:10-CV-00259-N, 2010 WL 4502155, at \*2 (N.D. Tex. Oct. 4, 2010) (stating that mortgagee is a creditor, not a debt collector under the FDCPA).

Plaintiffs admit that the loans were originated by Wachovia, and Wachovia subsequently merged into Wells Fargo.  *See* FAC ¶¶ 48-49, 53-57.  As such, Wells Fargo (along with any of its "servicing companies" or agents) is a creditor, not a debt collector, under the FDCPA.  *See Anderson v. CitiMortgage, Inc.*, No. 4:10-cv-398, 2011 WL 1113494, at \*5 (E.D. Tex. March 24, 2011) (stating creditor is not debt collector under FDCPA).  Plaintiffs' FDCPA claim fails for this reason alone.

2.     Plaintiffs were not the objects of debt collection activity.

The FDCPA claim also fails because Plaintiffs fail to identify a single act of "debt collection" by Wells Fargo or any other defendant.  Instead, Plaintiffs make the illogical leap from a purported tax manipulation scheme to alleged violations of the FDCPA.  Plaintiffs allege that Wells Fargo's "downward manipulation of the real estate market . . . was rooted in false, deceptive, or misleading representations related to the market value of lots at the Sanctuary." (FAC ¶ 72).  Even if Plaintiffs' allegations regarding the "downward manipulation of the real estate market" are true, Plaintiffs fail to explain how such manipulation would constitute a debt collection activity and how such an activity was directed at Plaintiffs.  Indeed, Plaintiffs flatly admit that the supposed manipulation of the real estate market involved Wells Fargo communicating with various appraisers, not with Plaintiffs.  *Id.* at ¶¶ 43-44.  Plaintiffs attempt to overcome this logical gap by alleging that the "fraudulent appraisals" were used by Wells Fargo "in the course of their negotiations" with Plaintiffs.  *Id.* at ¶ 70.  However, Plaintiffs do not adequately allege that Wells Fargo's use of the "fraudulent appraisals" constitutes a "false, deceptive, or misleading misrepresentation."  An appraisal is "an opinion as to the market value" of a property.  12 C.F.R. § 225.62(g).  Wells Fargo's use of these opinions regarding the value of properties does not constitute a misrepresentation of fact made in an attempt to collect a debt.  As such, any actions taken by Wells Fargo to "manipulate" the real estate market in The Sanctuary does not constitute debt collection activity directed at Plaintiffs.

Moreover, Plaintiffs' cannot base their FDCPA claim on their bare-bones assertion relating to foreclosures or threatened foreclosures.  Foreclosing pursuant to a deed of trust equates to enforcing a security instrument, which is separate and distinct from collecting on an obligation to pay money.  *See, e.g., Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (affirming jury's determination that initiating nonjudicial foreclosure did not constitute debt

collection); *Sweet v. Wachovia Bank & Trust Co.*, No. 3:03-cv-1212-R, 2004 WL 1238180, at *2 (N.D. Tex. Feb. 26, 2004) (holding foreclosure proceedings are not debt collection under the FDCPA).  Plaintiffs' failure to allege any acts of debt collection by Wells Fargo or any defendant dooms their FDCPA claim.  *See Bittinger v. Wells Fargo Bank N.A.*, 744 F. Supp. 2d 619, 626-27 (S.D. Tex. 2010).

Because Wells Fargo's foreclosure or attempted foreclosure of Plaintiffs' properties does not constitute "debt collection" under the FDCPA and because Plaintiffs fail to allege any other potential debt collection activity, Plaintiffs cannot not satisfy this essential element of their claim.[5]

**F.      Plaintiffs Fail to State a TDCA Claim**

The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts.  *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).  To demonstrate entitlement to relief under the TDCA, Plaintiffs must allege the following elements:  (1) their debts are consumer debts, (2) Defendants are debt collectors, as defined under the TDCA, (3) Defendants committed a wrongful act in violation of the TDCA, (4) the wrongful act was committed against Plaintiffs, and (5) Plaintiffs were injured as a result of Defendants' wrongful act.  *See* TEX. FIN. CODE §§ 392.001-392.404.

Aside from a quotation of the relevant TDCA provisions, Plaintiffs' TDCA claim largely mirrors their defective FDCPA claim.  Plaintiffs allege that Defendants "used one or more fraudulent, deceptive, or misleading representations regarding the character, extent, or amount of Plaintiffs' debt."  (FAC ¶ 76).  Plaintiffs further assert that "Defendants' use of fraudulent appraisals and wrongful foreclosures were done in an attempt to falsely represent the value of

---

[5] The Remote Plaintiffs cannot state an FDCPA claim because they admit they had not interaction with Wells Fargo. *See supra* part III.C.

lots in The Sanctuary and thereby unfairly collect misrepresented debt." *Id.* at ¶ 77.  Plaintiffs do not indicate the TDCA provision under which they assert their claims.  Based on their factual allegations, which consist largely of almost direct quotations of the relevant provisions, it appears that Plaintiffs intend to assert a claim under sections 392.304(a)(8) and 392.304(a)(19) of the TDCA:  "us[ing] a fraudulent, deceptive, or misleading representation" in "misrepresenting the character, extent, or amount of a consumer debt" or "us[ing] any other false representation or deceptive means to collect a debt . . . ."  *See* Tex. Fin. Code §§ 392.304(a)(8), 392.304(a)(19).  But, notably, the FAC is devoid of factual allegations which satisfy the elements of a claim for violation of any of these statutory provisions.

Among other things, the FAC fails to describe: (1) any action taken by Wells Fargo evidencing Wells Fargo's use of fraudulent, deceptive, or misleading representations to Plaintiffs; (2) any action taken by Wells Fargo in which Wells Fargo misrepresented to Plaintiffs the character, extent or amount of a debt owed by Plaintiffs; or (3) any action taken by Wells Fargo in which Wells Fargo used any type of false representation or deceptive means to collect a debt from Plaintiffs.  *See* FAC ¶¶ 74-78.  Indeed, as explained above, Plaintiffs admit that the alleged tax manipulation scheme involved communications between Wells Fargo and various appraisers, not Plaintiffs.  *See supra*, part III.E.2.  Aside from general allegations that Wells Fargo utilized "manipulated, low appraisals" in their attempts to collect on the promissory notes at issue, *see* FAC ¶74, Plaintiffs fail to identify any specific communications from Wells Fargo to any plaintiff that could amount to debt collection, much less a misrepresentation amounting to unlawful debt collection.  *See Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied) (noting that "[i]n order to

constitute a misrepresentation, [the defendant] must have made a false or misleading assertion."); *see also supra*, part III.E.2.

Moreover, in order to state a plausible claim for relief under the TDCA, Plaintiffs must allege facts showing that a violation of the statute occurred and that they were actually injured. *See* TEX. FIN. CODE § 392.403(a)(2).  Plaintiffs must also allege facts establishing a causal link between the conduct constituting the violation and the alleged injury.  *See id.*  Plaintiffs have done neither.  Instead, Plaintiffs merely state that Wells Fargo's alleged tax manipulation scheme caused Plaintiffs' damages.  *See* FAC ¶ 78.  Plaintiffs provide only conclusory statements and fail to plead a causal connection between the alleged TDCA violations and their purported injury.  Such allegations are insufficient to support a TDCA claim.  *See Kan v. OneWest Bank, FSB*, No. A-11-CA-381-SS, 2011 WL 5419693, at *1, *5 (W.D. Tex. Oct. 27, 2011).

Because Plaintiffs have failed to plead any allegations indicating that Wells Fargo engaged in conduct prohibited by the TDCA, their allegations under the TDCA should be dismissed with prejudice.

## G.    Plaintiffs Fail to State a Claim Under the DTPA

As with their claims under the FDCPA and TDCA, Plaintiffs' claim under the DTPA is inadequate and unsupported by factual allegations.  Plaintiffs allege that Defendants engaged in "an unconscionable course of action" in violation of the DTPA.  (FAC ¶ 79).  However, Plaintiffs fail to state a DTPA claim because (1) they are not consumers under the DTPA and (2) Plaintiffs fail to allege sufficient facts to support such a claim.

A plaintiff seeking to state a claim for a violation of the DTPA must establish that (1) he is a consumer, (2) the defendant committed a wrongful act proscribed by the DTPA or a tie-in provision, and (3) the defendant's act was a producing cause of the plaintiff's damages.  TEX.

Bus. & Com. Code § 17.41 *et seq.*; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  Plaintiffs have failed to, and cannot, plead facts concerning these essential elements.

      1.     <u>Plaintiffs are not "consumers" under the DTPA.</u>

Consumer status is an essential element of a claim for damages under the DTPA.  Tex. Bus. & Com. Code § 17.50(a); *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984).

> A person qualifies as a consumer under the DTPA by meeting two requirements.  First, the person must seek or acquire goods or services by lease or purchase.  Tex. Bus. & Com. Code § 17.45 (4).  Second, the goods or services sought or acquired must form the basis of the party's complaint.  *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351-52 (Tex. 1987).

*Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied).  Whether a person meets the requirements for consumer status is a question of law.  *Id.* at 160 (citation omitted).

Here, Plaintiffs cannot establish this threshold requirement of consumer status.  Plaintiffs have not sought or acquired "goods or services" in a consumer transaction that form the basis of their complaint.[6]  Plaintiffs assert a claim for a violation of the DTPA based on the same alleged tax manipulation scheme that underlies all of their causes of action.  *See* FAC ¶ 79.  Plaintiffs' allegations appear to be premised on Wells Fargo's actions in servicing the loan and foreclosure-related activities—all of which occurred <u>*after*</u> the purchase of the underlying properties and have nothing to do with the origination of Plaintiffs' loans.  *See id.* at ¶¶ 48-57.  However, "subsequent actions related to mortgage accounts—for example, extensions of further credit <u>*or modifications of the original loan*</u>—do not satisfy the 'good or services' element of the DTPA."

---

[6] The Remote Plaintiffs *cannot* be consumers under the DTPA because they admit they have no relationship, contractual or otherwise, with Defendants, *see* Compl. ¶¶ 58-62, and thus, did not seek to acquire goods or services from Defendants.  *See Fix*, 242 S.W.3d at 159.  Accordingly, to the extent the FAC can be read to assert a DTPA claim on behalf of the Remote Plaintiffs, the claim should be dismissed.  *Id.*

*Broyles v. Chase Home Fin.*, No. 3:10-cv-2256-G, 2011 WL 1428904, at *4 (N.D. Tex. April 13, 2011) (emphasis added); *see also Grant-Brooks v. WMC Mortgage Corp.*, No. 3:02-cv-2455-AH, 2003 WL 23119157, at *7-8 (N.D. Tex. Dec. 9, 2003) (holding borrowers are not "consumers").[7] Thus, Plaintiffs' DTPA claim fails.

    2.    <u>Plaintiffs fail to allege specific wrongful acts under the DTPA.</u>

In addition to consumer status, a plaintiff seeking to state a claim for a violation of the DTPA must also establish that the defendant committed a wrongful act proscribed by the DTPA. TEX. BUS. & COM. CODE § 17.41 *et seq.*; *Amstadt,* 919 S.W.2d at 649. To satisfy the "wrongful act" element, Plaintiffs must plead that Wells Fargo engaged in an unconscionable action or course of action. TEX. BUS. & COM. CODE § 17.50(a)(3).

As they do with all of their claims, Plaintiffs fail to allege any specific acts of Wells Fargo that violate the DTPA. The majority of Plaintiffs' FAC focuses on providing a lengthy discourse of the implausible tax manipulation scheme. However, Plaintiffs fail to allege how such a scheme is connected to their DTPA claim and, further, fail to allege how such a scheme violates the DTPA. In fact, when allegations related to the alleged tax manipulation scheme are ignored, Plaintiffs' DTPA claim consists almost entirely of a quotation of the relevant statutory provision. *See* FAC ¶ 79 (stating that Wells Fargo engaged in "an unconscionable action or course of action"); *see also* TEX. BUS. & COM. CODE § 17.50(a)(3). Because Plaintiffs fail to adequately plead a wrongful act under the DTPA, their DTPA claim should be dismissed. *See* TEX. BUS. & COM. CODE § 17.50(a)(3); *Amstadt,* 919 S.W.2d at 649.

---

[7] Plaintiffs attempt to overcome this hurdle to their claim by asserting that "Plaintiffs Freeman, Berry, Velazco, Miller, Barfield, Davis, Babb, Ryan and Hessey were consumers . . . because each of them engaged in negotiations with Wells Fargo related to new loans that would replace the original notes entered into with Wachovia." (FAC ¶ 79). However, an unadorned statement that Plaintiffs engaged in unspecified "negotiations" does not plausibly suggest that the Plaintiffs at issue sought or acquired "goods or services." *Iqbal*, 129 S. Ct. at 1949. Indeed, the allegation is directly contradicted elsewhere in the FAC—Plaintiffs repeatedly assert that Wells Fargo refused to negotiate and pushed the loans to foreclosure. *See* FAC ¶¶ 40-42.

## H.     Plaintiffs' Fraud by Nondisclosure Claim Fails

In support of their fraud by nondisclosure claim, Plaintiffs allege that Defendants had a duty to disclose "that the appraisals violate[d] USPAP and federal laws and regulations."  (FAC ¶ 80).  Plaintiffs further allege that Defendants induced Plaintiffs into wrongful foreclosures and "prematurely forced others into debt relief programs."  *See id.*   Plaintiffs' allegations are insufficient to state a claim because they do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and because Plaintiffs fail to allege sufficient facts to state a claim.

### 1.     Plaintiffs' allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.

Plaintiffs' fraud by nondisclosure claim does not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly."  *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564 (5th Cir. 2002).   "To satisfy Rule 9(b), the plaintiff must allege with specificity 'the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they are fraudulent.'"  *Lechner v. CitiMortgage, Inc.*, No. 4:09-CV-302-Y, 2009 WL 2356142, at *4, (ND. Tex. July 29, 2009). (quoting *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005)).  In other words, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud."[8] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU*

---

[8] A plaintiff must include "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993); *see Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir.), *cert. denied*, 118 S. Ct. 412 (1997).

*Corp.*, 565 F.3d 200, 206-07 (5th Cir. 2009).  "Conclusory allegations of fraud are not sufficient to survive dismissal for failure to state a claim."  *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990); *see Rico v. JPMorgan Chase Bank N.A.*, No. 3:10-CV-1643-L, 2011 WL 1792854, at *5 (N.D. Tex. May 10, 2011) (applying Rule 9(b)'s pleading standard to fraud by nondisclosure claim).

Plaintiffs' fraud by nondisclosure claim falls woefully short of Rule 9(b)'s specificity requirement.  Plaintiffs allege that Wells Fargo had a duty to disclose the allegedly improper appraisals  *See* FAC ¶ 80.  Plaintiffs further allege that Wells Fargo concealed material facts from Plaintiffs Freeman, Berry, Velazco, Miller, Barfield Davis, Babb, Ryan and Hessey during their discussions with those Plaintiffs.  *Id.*  However, Plaintiffs provide no details regarding the source of any alleged duty to disclose.  Plaintiffs merely make the conclusory assertion that "Texas law" and "applicable federal laws and regulations" imposed on Wells Fargo a duty to disclose.  *Id.*  Such conclusory assertions are insufficient to state a claim.  Moreover, Plaintiffs fail to provide any details regarding the allegedly concealed information, such as who concealed the information from Plaintiffs, when the information was concealed, or how it was concealed.  Because Plaintiffs' fraud by nondisclosure claim lacks sufficient specificity, Rule 9(b) mandates its dismissal.  *See Shushany*, 992 F.2d at 520-21.

    2.    <u>Wells Fargo does not owe Plaintiffs a duty to disclose as a matter of law.</u>

Plaintiffs' claim for fraud by nondisclosure requires proof that Wells Fargo owed them a duty.  *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).  Plaintiffs' claim is based entirely on the conclusory allegation that Wells Fargo had a duty to disclose lot values based on "Texas law" and "applicable federal laws and regulations"  (FAC ¶ 80).  However, such a conclusory allegation cannot support a fraud by nondisclosure claim.  *See Rico*, 2011 WL 1792854, at *6 (holding that a conclusory assertion that a defendant "owed [plaintiffs] a duty"

failed to state a claim); *see also Collier v. Wells Fargo Home Mortgage*, No. 7:04-CV-086-K, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (holding that there is no special relationship giving rise to any extra-contractual duties between a mortgagor and mortgagee).  Because Plaintiffs have not and cannot plead that Wells Fargo owed them a duty separate from the various deeds of trust, their fraud by nondisclosure claim should be dismissed as a matter of law.

       3.    <u>Plaintiffs do not adequately allege reliance.</u>

To state a claim for fraud by nondisclosure, Plaintiffs must also allege reliance.  *Grinnell*, 951 S.W.2d at 436.  Plaintiffs fail to adequately allege that they relied on any alleged nondisclosure by Wells Fargo.  Instead, Plaintiffs state "Plaintiffs . . . relied on Wells Fargo's and the servicing companies' failure to disclose that the appraisal values they were citing . . . were false and manipulated . . . ."  (FAC ¶ 80).  According to Plaintiffs, if they had known of the "market manipulations," they "would have had the opportunity to take action" to avoid their alleged damages.  *Id.*  However, Plaintiffs fail to explain how having this allegedly concealed information would have changed the fact that (1) Plaintiffs could not make their mortgage payments, (2) Plaintiffs defaulted on their loans, and (3) as a result, Wells Fargo was entitled to foreclose.  Simply put, Plaintiffs' actions, not their reliance on allegedly concealed information, caused their damages.  And, their bare-bones allegations of reliance cannot support a claim.  *See Iqbal*, 129 S. Ct. at 1949.

**I.    Plaintiffs' Statutory Fraud Claim Fails**

Plaintiffs allege that Wells Fargo made material false representations involving a real estate transaction.  *See* FAC ¶ 82.  Plaintiffs' statutory fraud claim fails because: (1) it does not satisfy the Rule 9(b) pleading standard and (2) the statute creating the statutory fraud cause of action is inapplicable here.

1.      <u>Plaintiffs' statutory fraud claim does not satisfy the Rule 9(b) pleading standard.</u>

For the reasons stated in part III.H.1., *supra*, Plaintiffs' statutory fraud claim does not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs do not make a single allegation setting forth who made any alleged representation, where such representation was made, the date such representation was made, why such representation was made, or any explanation of why any such alleged representation was fraudulent, all of which Plaintiffs must allege to state a statutory fraud claim.  *See Lechner*, 2009 WL 2356142, at *4; *see also Plotkin*, 407 F.3d at 696.  Rule 9(b) mandates the dismissal of Plaintiffs' statutory fraud claim.  *See Shushany*, 992 F.2d at 520-21.

2.      <u>Section 27.01 does not apply to this case.</u>

Plaintiffs' statutory fraud claim also fails because Texas Business and Commerce Code Section 27.01(a) is inapplicable to this case.  A close "examination of § 27.01 shows that it is concerned with misrepresentation of material fact made to induce another to enter into a <u>contract for the sale of land</u> or stock."  *Nolan v. Bettis*, 577 S.W.2d 551, 556 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (emphasis added).  Section 27.01 is not applicable to situations where a party merely loans money or services a loan.  *See id.*; *see also Greenway Bank & Trust of Houston v. Smith*, 679 S.W.2d 592, 596 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (stating "[t]he statute makes no mention of any application to . . . a party who 'merely' loaned money for the purchase of real estate.").  "A loan transaction, even if secured by land, is not considered to come under [Section 27.01]."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (quoting *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied)).

Here, Plaintiffs' allegations do not relate to the purchase of land.  Instead, Plaintiffs focus on alleged misrepresentations related to the pre-foreclosure value of lots in The Sanctuary.  *See* FAC ¶ 82.  Accordingly, Section 27.01 is inapplicable to this case, and Plaintiffs' statutory fraud claim should be dismissed.

      3.     <u>Plaintiffs do not adequately allege detrimental reliance on any alleged misrepresentation.</u>

Plaintiffs' statutory fraud claim also fails because Plaintiffs do not adequately allege that they detrimentally relied on any alleged misrepresentation of Wells Fargo.  Detrimental reliance is an essential element of a claim for statutory fraud.  *See* TEX. BUS. & COM. CODE §§ 27.01(a)(1)(B), (a)(2)(D).  Other than making the conclusory statement that "Plaintiffs relied on [Defendants'] false representations by entering into wrongful foreclosure and premature and unnecessary debt relief," Plaintiffs make no allegation of detrimental reliance.  *See* FAC ¶ 82.  Yet, Plaintiffs fail to reconcile their conclusory allegations of detrimental reliance with their admission that they defaulted on their loans.  *Compare id. with id.* at ¶¶ 48-62.  Simply put, by Plaintiffs' own admission, any foreclosures or debt relief arise from their default, not from any misrepresentations by Wells Fargo.  Plaintiffs' failure to plead or show how they detrimentally relied on any alleged misrepresentation from Wells Fargo renders Plaintiffs' statutory fraud claim flawed as a matter of law, and the Court should dismiss it.

**J.**    **Plaintiffs Fail to State a Claim for Negligence**

To prevail on a claim for negligence, a plaintiff must establish; (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached the duty; and (3) the breach proximately caused the plaintiff's injury.  *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citations omitted).  Plaintiffs allege that Wells Fargo owed a legal duty to Plaintiffs arising from various statutes and because Plaintiffs were within "the zone of foreseeable risk."

*See* FAC ¶ 87.  Plaintiffs allege that FIRREA, USPAP, and Texas common law impose a duty to Plaintiffs upon Defendants.  *Id.*  However, Plaintiffs fail to reconcile their conclusory assertions with well-settled Texas law holding that a lender does not owe a borrower extra-contractual duties.  Indeed, Texas courts have not recognized any such extra-contractual legal duties in the mortgage lending context.  *See Motten v. Chase Home Fin.*, No. H-10-4994, 2011 WL 2566092, at *11 (S.D. Tex. June 28, 2011) (finding that the defendant mortgage servicer did not have a recognized "duty to Plaintiffs of modification services, protecting Plaintiffs['] home.") (alteration in original); *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (stating that the relationship of a mortgagor and a mortgagee does not give rise to a duty of good faith); *see also Thrash v. Ocwen Loan Servicing, LLC (In re Thrash)*, 433 B.R. 585, 597 (Bankr. N.D. Tex. 2010) (stating that there is no duty to act reasonably toward other people generally) (citing *THPD, Inc. v. Cont'l Imps., Inc.*, 260 S.W.3d 593, 616 (Tex. App.—Austin 2008, no pet.)).  Consequently, Plaintiffs' negligence claims fail as a matter of law, and should be dismissed.[9]

## K.     Plaintiffs Fail to State a Claim for Wrongful Foreclosure

To support a claim for wrongful foreclosure, a plaintiff must prove: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate sales price; and (3) a causal connection between the defect and the grossly inadequate sales price.  *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011).  Plaintiffs allege that Wells Fargo wrongfully foreclosed on their properties because the tax manipulation scheme and Wells Fargo's "self-serving bids" resulted in defects in the foreclosure proceedings for Plaintiffs

---

[9] Moreover, the Remote Plaintiffs have no connection to Wells Fargo.  *See supra* part III.C.  Thus, there is no relationship from which any duty could arise.  The Remote Plaintiffs' negligence claims must fail for this reason alone.  *See In re Thrash*, 433 B.R. at 597 (stating that there is no duty to act reasonably toward other people generally).

Freeman, Berry, and Velazco.  (FAC ¶ 90).  These bare-bones allegations amount to nothing more than a recital of the elements of a wrongful foreclosure claim and, thus, are insufficient to state a claim.  *Iqbal*, 129 S. Ct. at 1949.

Moreover, Plaintiffs' wrongful foreclosure claim fails as a matter of law because Plaintiffs do not sufficiently allege a specific defect in any foreclosure sale.  The FAC contains no allegations regarding the foreclosure process leading up to any foreclosure sale.  Indeed, the only allegations of a defect in the foreclosure sale proceedings merely state that the "use of false and illegal appraisals" was a defect in the foreclosure proceedings.  *See* FAC ¶ 90.  However, such an allegation is implausible on its face.  *See Iqbal*, 129 S. Ct. at 1949.  Plaintiffs do not allege that Wells Fargo suppressed other bids at the various foreclosure sales, and they fail to explain how Wells Fargo's use of lower appraised values would necessarily result in a foreclosure defect.  Indeed, if Wells Fargo was actually utilizing under-valued appraisals, Plaintiffs were free to purchase the properties at foreclosure for their "true value."

Finally, Plaintiffs' wrongful foreclosure claim fails because Plaintiffs fail to allege that they have tendered, or have the ability to tender, the full amounts due and owing on their respective loans.  *See White v. BAC Home Loans Servicing, LP*, No. 3:09-CV-2484-G, 2010 WL 4352711, at *5 (N.D. Tex. Nov. 2, 2010).  It is well settled under Texas law that in order to be entitled to the equitable remedy of rescission, a plaintiff must first tender the total amount due under the subject loan.  *See id.* (citing *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835-836 (Tex. App.—Fort Worth 1999, pet. denied)); *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (noting that "a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note."); *Grella v. Berry*, 647 S.W.2d 15, 18 (Tex. App.—Houston [1st Dist.] 1982, no writ) (noting, "[i]n

a suit seeking equitable relief to avoid foreclosure, where the appellants allege they can pay the full amount of the note, we are of the opinion that the appellants must affirmatively demonstrate their ability to pay the full amount due on the note if they are to obtain equity.").   In other words, in order to get equity, Plaintiffs must do equity and tender the debt owed.  *See White*, 2010 WL 4352711, at *5; *Lambert*, 933 S.W.2d at 836.   Since Plaintiffs have not alleged that they have tendered or are able to tender the total debt owed under the Note, they are not entitled to rescission of the substitute trustee's deeds and foreclosure sales or any other equitable relief based on their wrongful foreclosure claim.  *See White*, 2010 WL 435271, at *5.  Thus, Plaintiffs' claim for wrongful foreclosure fails on this ground as well.

**L.      Plaintiffs Fail to State a Claim for Unreasonable Collection Efforts**

In Texas, unreasonable collection efforts is a tort "that lacks clearly defined elements." *B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, No. 4:08-CV-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009) (citing *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).   Courts have defined the tort as collection "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  *EMC*, 252 S.W.3d at 868-69; *see also Mitchell v. Chase Home Fin. LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008).

The FAC fails to meet this standard.  Plaintiffs allege that the supposed tax manipulation scheme "amounts to a course of harassment that was willful, wanton, malicious and intended to inflict mental anguish and bodily harm."  *See* FAC ¶ 92.  As with their other claims, Plaintiffs allegations merely state the elements of their cause of action in a conclusory manner, which is insufficient to state a claim.  *See Iqbal*, 129 S. Ct. at 1949.  Moreover, Plaintiffs fail to explain how an alleged scheme involving Wells Fargo and various appraisers amounted to a course of harassment against Plaintiffs.   Indeed, outside of apparent communications related to

refinancing, the FAC contains no allegation that Wells Fargo even communicated with Plaintiffs, much less that Wells Fargo harassed Plaintiffs.  *See, e.g.*, FAC ¶¶ 48-62.  Plaintiffs' unreasonable collection claim fails for this reason alone.

In addition, although some Texas courts have found debt collection to be tortious when lenders attempt to collect debts they are not owed, those cases involved debts that had been fully paid or discharged.  *See, e.g.*, *Pullins v. Credit Exch. of Dallas, Inc.*, 538 S.W.2d 681, 682-683 (Tex. Civ. App.—Waco 1976, no writ).  That is not the case here, where Plaintiffs admit they defaulted on their payment obligations, and make no allegation that their notes have been fully paid or discharged.  *See, e.g.*, FAC ¶¶ 48-57.  Several district courts have recently distinguished cases where, as here, the borrowers still owe money to the lender.  *See, e.g.*, *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010); *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010); *Mitchell*, 2008 WL 623395, at *6.  Because Plaintiffs admit they were in default, they cannot prevail on a tort claim for unreasonable debt collection efforts.

Furthermore, Plaintiffs have failed to allege any facts that Defendants' actions amounted to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.  Plaintiffs admit that they defaulted on their mortgage payment obligations, thereby effectively admitting that Defendants were contractually entitled to foreclose on each property.  *See* FAC ¶¶ 48-57.  Merely exercising a contractual right to foreclose does not constitute the type of willful, wanton, and malicious conduct that the tort of unreasonable collection efforts aims to prevent.  *See Narvaez*, 757 F. Supp. 2d at 635-36; *Bray v. Cadle Co.*, No. 4:09-CV-663, 2010 WL 4053794, at *18-19 (S.D. Tex. Oct. 14, 2010).  In light of the

foregoing, Plaintiffs' unreasonable collection efforts claim fails as a matter of law and must be dismissed.

## M.    Plaintiffs Fail to Establish a Usury Claim under the NBA

Plaintiffs allege Wells Fargo's use of "bogus appraisals" resulted in principal deficiencies that "were artificially and illegally manipulated to be lower than what they would have been" if proper appraisals had been used.  *See* FAC ¶ 94.  According to Plaintiffs, the difference between the "artificially high" principal remaining after foreclosure and the price each property "should have been" sold for amounts to usurious interest under the NBA.  *Id.*  As with their other claims, such an allegation is implausible on its face.  *See Iqbal*, 129 S. Ct. at 1949.  Plaintiffs do not allege that Wells Fargo suppressed other bids at the various foreclosure sales, and they fail to explain how Wells Fargo's use of lower appraised values would necessarily result in a lower foreclosure price at a public foreclosure sale over which Wells Fargo had no control.  The difference between the value of a property as determined at a public foreclosure sale and what Plaintiffs think the value "should be" does not constitute usurious interest.  Accordingly, the Court should dismiss Plaintiffs' usury claim.  *See Iqbal*, 129 S. Ct. at 1949.

## N.    Plaintiffs Fail to Establish a Claim for Negligent Misrepresentation

Plaintiffs allege that Wells Fargo negligently misrepresented "the true market values of lots in The Sanctuary."   (FAC ¶ 95).  Aside from being impermissibly conclusory, Plaintiffs unsupported allegation ignores the elements of a negligent misrepresentation claim.  A claim for negligent misrepresentation requires a showing that:  (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  *See Burnette v.*

*Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2010 WL 1026968, at *7 (E.D. Tex. Feb. 16, 2010) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 706 n.24 (Tex. 2002)).

Plaintiffs do not and cannot assert any facts that could support a conclusion that Wells Fargo's alleged misrepresentations were made for the guidance of Plaintiffs in their business, nor have they alleged any facts showing that they justifiably relied, to their detriment, on the alleged misrepresentations by Wells Fargo. Instead, Plaintiffs merely allege that they "justifiably relied" on Wells Fargo's negligent misrepresentations. (FAC ¶ 95). Simply put, Plaintiffs' bare-bones allegations, without more, are insufficient to establish reliance on the alleged representations or establish how such alleged misrepresentations caused Plaintiffs to suffer pecuniary loss. *See Biggers*, 767 F. Supp. 2d at 734-35 (stating that negligent misrepresentation claim failed because Plaintiffs failed to allege reliance and because the "mere fact that their property was put in jeopardy . . . does not make a plausible showing of pecuniary loss"). Plaintiffs' negligent misrepresentation claim is inherently and fatally flawed, cannot withstand Rule 12(b)(6) scrutiny, and should be dismissed with prejudice.

**O.    Plaintiffs Fail to State a Claim for Gross Negligence**

Plaintiffs' gross negligence claim is also defective. To properly plead a claim for gross negligence, Plaintiffs must establish the threshold elements for an ordinary negligence claim, which they have not done and cannot do. *See Dekelaita v. BP Amoco Chem. Co.*, No. G-07-0131, 2008 WL 2964376 at *15 (S.D. Tex. Jul. 30, 2008) (stating "a finding of ordinary negligence is a prerequisite to a finding of gross negligence") (citing *Hall v. Stephenson*, 919 S.W.2d 454, 468 (Tex. App.—Fort Worth 1996, writ denied)); *see also supra*, part III.J.

Further, Plaintiffs do not and cannot assert the facts necessary to establish a claim for gross negligence. For a gross negligence claim, a plaintiff must show that (1) viewed objectively from the actor's standpoint, the act or omission complained of departs from the ordinary standard

of care to such an extent that it creates an extreme degree of risk of harming others, and (2) the actor had actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others.  *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citation omitted).

Plaintiffs' allegations mirror these two elements, but provide no factual detail to support their claim.  *See* FAC ¶ 97.  Plaintiffs fail to identify a duty of care with respect to their purported gross negligence claim and fail to explain how Wells Fargo's acts created "an extreme degree of risk of harm" to Plaintiffs.  Indeed, there is no indication from the allegations in the FAC that Defendants owed Plaintiffs any duty of care apart from that arising from the notes and deeds of trust.  *See supra*, parts III.H.2.; III.J.  Accordingly, Plaintiffs' gross negligence claim must fail.

**P.     Plaintiffs Fail to State a Claim for Unjust Enrichment**

Unjust enrichment is a "theory of recovery" rather than a distinct independent cause of action.  *See Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).  A plaintiff may recover under this theory where the defendant has obtained a benefit from the plaintiff due to fraud, duress, or taking of undue advantage.  *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  The theory of unjust enrichment is based on the absence of an express agreement.  *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

Plaintiffs allege that "Wells Fargo was unjustly enriched when it, among other bad acts, fraudulently and artificially drove down lot values within The Sanctuary . . . ."  (FAC ¶ 99). However, Plaintiffs' unjust enrichment claim fails for several reasons.  First, as set forth above, unjust enrichment is not an independent cause of action or a cognizable claim that can be asserted here.  *See Mowbray*, 76 S.W.3d at 679.  To the extent Plaintiffs seek this recovery based

on their other claims, this request for relief must fail for the same reasons as the other claims fail. Furthermore, Plaintiffs have not alleged any facts plausibly suggesting fraud, duress or taking of undue advantage sufficient to state a claim for relief under this theory. *See generally* FAC. Plaintiffs have alleged no facts plausibly suggesting Wells Fargo received a benefit to their detriment. *See Heldenfels Bros.*, 832 S.W.2d at 41. Finally, Plaintiffs' unjust enrichment claim should be barred given that a contract governs the parties' relationship. The Texas Supreme Court has stated that there generally can be no recovery under a theory of unjust enrichment when an express contract covers the subject matter of the parties' dispute. *See Fortune Prod. Co.*, 52 S.W.3d at 684. For each of these reasons, the Court should dismiss Plaintiffs' unjust enrichment claim.

**Q.     Plaintiffs Fail to State a Claim for Conspiracy**

The elements of a conspiracy claim include: (1) a combination by two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1969) (including requirements that persons undertake an intentional, concerted action to defraud). Conspiracy is a derivative tort; "[t]hat is, a defendant's liability for conspiracy depends on its participation in some underlying tort for which the plaintiff seeks to hold at least one of the . . . defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "[R]ecovery is not based on the conspiracy; instead, it is based on an underlying tort." *Lesikar v. Rappeport*, 33 S.W.3d 282, 301-02 (Tex. App.—Texarkana 2000, pet. denied) (citation omitted). Thus, as an initial matter, Plaintiffs' conspiracy claim fails for the same reasons that their underlying claims fail.

In addition, Plaintiffs fail to plead facts with respect to the conspiracy, including who is involved in the combination, the object, or any meeting of the minds, much less overt acts taken to accomplish the object. *See Massey*, 652 S.W.2d at 934. Indeed, Plaintiffs' allegations contain little more than the elements of a conspiracy claim. *See* FAC ¶ 100. As such, this claim must fail. *See Iqbal*, 129 S. Ct. at 1949.

**R.      Plaintiffs Fail to State a Claim for Aiding and Abetting**

Plaintiffs wholly fail to plead any facts which could establish a claim for aiding and abetting. As with every other claim alleged in the FAC, Plaintiffs state the elements required to state a claim but provide no relevant factual support for their claim. *See* FAC ¶ 102. Accordingly, the claim fails on this ground alone. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. Furthermore, since Plaintiff's claim for aiding and abetting is wholly premised on their other failed claims, it also fails as a matter of law. *See, e.g., Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (in the context of summary judgment, dismissing claim for aiding and abetting claim based on same allegations as failed fraud and conspiracy claims).

**S.      To the Extent Plaintiffs Attempt to Regulate Wells Fargo's Banking Practices Through State Common Law, Plaintiffs' Claims are Barred by the National Bank Act**

Plaintiffs' fraud by nondisclosure claim and wrongful foreclosure claims should be dismissed because they are preempted by the National Bank Act ("NBA"). 12 U.S.C. §§ 21 *et seq.* The NBA vests in national banks, such as Wells Fargo, "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh); *see Wells Fargo Bank of Tex. N.A. v. James*, 321 F.3d 488, 490 (5th Cir. 2003); *see also Wier v. Countrywide Bank, N.A.*, No. 10-CV-11468, 2011 WL 1256944, at *3-4 (E.D. Mich. March 31, 2011). The statute provides that the "Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the

responsibilities of the office." *See Wier*, 2011 WL 1256944, at \*3 (citing 12 U.S.C. § 93a). "This authority includes the authority to define the 'incidental powers' of national banks beyond those specifically provided in the statute." *See Wier*, 2011 WL 1256944, at \*3 (citation omitted). Significantly, "[Office of the Comptroller of the Currency ("OCC") ] regulations possess the same preemptive effect as the Act itself." *Id.* (citations omitted).

The NBA and OCC regulations do not preempt the applicability of all state laws to national banks, as "[f]ederally chartered banks are subject to state laws of general application in their daily business *to the extent such laws do not conflict with the letter or the general purposes of the NBA*." *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 11 (2007) (citations omitted) (emphasis added); *Wier,* 2011 WL 1256944, at \*3.  However, when state law "significantly impair[s] the exercise of authority, enumerated or incidental under the NBA, the [s]tate's regulations must give way." *See Watters*, 550 U.S. at 12.  The Fifth Circuit has recognized the preemptive effect of the NBA as applied to Texas laws which conflict with the lending authority of national banks. *See Wells Fargo Bank of Tex. N.A.*, 321 F.3d at 491, 495.

Here, in support of their fraud by nondisclosure claim, Plaintiffs allege that Defendants had a duty to disclose the alleged impropriety of their appraisal practices.  (FAC ¶ 80).  The claim "presuppose[s] that certain information needed to be disclosed" during the foreclosure process. *See Wier*, 2011 WL 1256944, at \*3.  However, the NBA—not state common law—governs the lending powers of a national bank.  In seeking to impose on Wells Fargo an amorphous duty to discover and disclose the "true value" of various properties, Plaintiffs ask the Court to impose an onerous burden on Wells Fargo's banking powers in direct violation of the NBA.  Plaintiffs' fraud by nondisclosure claim fails for this reason alone. *See Watters*, 550 U.S. at 12; *Wier*, 2011 WL 1256944, at \*3

(dismissing fraud claim based on NBA preemption because, through the claim, the plaintiff sought to impose a duty to disclose not found in the NBA) (citing 12 C.F.R. § 34.4(a)(9), (10)).[10]

Moreover, in support of their wrongful foreclosure claim, Plaintiffs allege that "Wells Fargo made self-serving bids for lots at foreclosure sales which were artificially and fraudulently low and unrelated to market value . . . ."  (FAC ¶ 90).  This allegation again suggests that Plaintiffs are attempting to utilize this claim to regulate Wells Fargo's banking practices.  Specifically, Plaintiffs seek to impose burdens and/or duties on Wells Fargo related to how it values properties and how it conducts bids at foreclosure sales.  However, imposing those additional duties on Wells Fargo would run contrary to the NBA.  As such, to the extent Plaintiffs' wrongful foreclosure claim seeks to burden Wells Fargo's lending practices, it must fail.  *See Watters*, 550 U.S. at 12; *Wier*, 2011 WL 1256944, at *3.[11]

## T.    To the Extent Plaintiffs Attempt to Use State Law Claims to Recover "Loss of Credit Damages," Their Claims are Preempted by the Fair Credit Reporting Act

Plaintiffs allege that Defendants' actions resulted in damage to their credit.  *See, e.g.*, FAC ¶ 48.  Plaintiffs may not, however, recover these damages through their state law claims because they are preempted by the Fair Credit Reporting Act ("FCRA").  The FCRA includes a "strong preemption clause" that precludes state laws from altering the responsibilities of persons

---

[10] To the extent any of Plaintiffs' state law claims are based on their allegations that Wells Fargo refused to allow Plaintiffs to refinance their loans or that Wells Fargo was somehow obligated to modify their loan, *see* FAC ¶¶ 40-41, their claims are barred by the NBA.  Such allegations fall squarely within the loan activities listed in section 34.4(a), which authorizes national banks to make real estate loans without regard to state limitations regarding "terms of credit, including . . . balance, payments due," and "circumstances under which a loan may be called due and payable," and encompass processing and servicing of, and participation in, mortgages.  *See* 12 C.F.R. §§ 34.4(a)(4), (a)(10).

[11] Plaintiffs are expected to argue that their claims are exempted from preemption under section 34.4(b).  12 C.F.R. § 34.4(b).  However, that exemption does not apply here.  State laws on the subjects outlined in Section 34.4(b) apply to national banks "to the extent that they only incidentally affect the exercise of national banks' real estate lending powers."  *See id.*  Indeed, courts have found preemption of these areas where the claims as pled clearly encompass lending activities outlined in Section 34.4(a) as the claims do not, in such an instance, "only incidentally" affect the exercise of national banks' real estate lending powers, but, instead, expressly interfere with them.  *See Wier*, 2011 WL 1256944, at *3.

who furnish information to consumer reporting agencies.  *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011).  The FCRA prohibits reporting information relating to a consumer to a consumer reporting agency if the reporting person knows or has reasonable cause to know the information is inaccurate.  *Id.*  If inaccurate credit reporting provides the basis of a plaintiff's state law claim, regardless of whether the claim sounds in statute or tort, it is preempted by the FCRA.  *Id.* (finding that a TDCA claim was preempted by the FCRA).

Here, Plaintiffs' lost credit damages are preempted by the FCRA.  Although Plaintiffs fail to tie their lost credit damages to any particular cause of action, Plaintiffs may not collect through their state law claims for alleged damage done to their credit.  *See Ayers*, 787 F. Supp. 2d at 457.  To the extent Plaintiffs state law claims attempt to recover for lost credit damages, the claims should be dismissed.

**U.      Plaintiffs Fail to Adequately Allege Damages**

Plaintiffs' claims also fail because Plaintiffs do not allege damages with sufficient particularity.   Plaintiffs seek to recover actual damages, economic damages, loss of credit damages, damages for lost business dealings, mental anguish damages, and exemplary damages. *See* FAC ¶¶ 48-62.  Although Plaintiffs allege they were injured, they fail to explain how any damages resulted from Defendants' actions, a required element of Plaintiffs' claims.  *See, e.g., Burnette*, 2010 WL 1026968, at *7 (negligent misrepresentation claim); *Nabors Drilling*, 288 S.W.3d at 404 (negligence claim); *Amstadt*, 919 S.W.2d at 649 (DTPA claim); *Massey*, 652 S.W.2d at 934 (conspiracy claim); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30 (Tex. App.—Tyler 2000, pet. denied) (TDCA claim).  Their conclusory damage allegations are entitled to no presumption of truth.  *See Iqbal*, 129 S. Ct. at 1949.  Moreover, Plaintiffs remain in possession of their properties, and any damages related to the properties arise solely from Plaintiffs' defaults on their loans.

In addition, Plaintiffs fail to allege any facts in support of their naked assertion that they are entitled to mental anguish damages. *See, e.g.*, FAC ¶ 48. Recovering mental anguish damages requires showing "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger" and causes "a substantial disruption in the plaintiffs' daily routine . . . ." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (citation and quotation marks omitted). Plaintiffs make no such allegations in support of their alleged mental anguish. *See generally* FAC. Because Plaintiffs have not sufficiently alleged damages, their claims should be dismissed.

## IV.    CONCLUSION

WHEREFORE, based on the foregoing, Defendant Wells Fargo Bank, N.A., incorrectly named as Wachovia Bank, N.A., Wachovia Settlement Services, LLC, Greenlink, LLC, Wells Fargo Home Mortgage, Inc., and America's Servicing Company respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Wells Fargo further requests all other relief, in law or in equity, to which it may be justly entitled.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded to the following counsel of record, ***via CM/ECF*** pursuant to the Federal Rules of Civil Procedure, on this 16th day of April, 2012:

Craig M. Sico

Roger S. Braugh, Jr.

SICO, WHITE, HOELSCHER & BRAUGH, L.L.P.

802 N. Carancahua, Suite 900

Corpus Christi, Texas 78401

361.653.3333 (Facsimile)

*Attorneys for Plaintiffs*

John Flood

FLOOD & FLOOD

802 N. Carancahua, Suite 900

Corpus Christi, Texas 78401

361.654.8879 (Facsimile)

*Attorneys for Plaintiffs*

Michael Johnson

121 S. Main St.

P.O. Box 1667

Victoria, Texas 77902

361.485.0465 (Facsimile)

*Attorneys for Plaintiffs*

/s/ Robert T. Mowrey by permission M.H.D.

Counsel for Defendants