UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| MACK DAVIS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 6:11-CV-00047 |
| § | |
| WELLS FARGO BANK, N.A., *et al*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM OPINION**

Upon learning that six of the plaintiffs did not have mortgage loans with Wells Fargo, the Court allowed the parties to file motions for reconsideration of its previous Memorandum and Order on Defendants' Motion to Dismiss. *See Davis v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ----, 2013 WL 5488448 (S.D. Tex. Sept. 30, 2013). These "Remote Plaintiffs" filed a Motion for Reconsideration of the Court's dismissal of their negligence and gross negligence claims. Docket Entry No. 50. Defendants filed a Motion for Reconsideration of the Court's refusal to dismiss all claims against these plaintiffs. Docket Entry No. 51. Because the Remote Plaintiffs have clarified that they never intended to assert a number of causes of action alleged by the other plaintiffs that require some type of communication between a plaintiff and defendant,[1] only the following claims are

---

[1] The Remote Plaintiffs state that they acknowledge other claims asserted in the case require a direct relationship (or at least communications) with the Defendant and thus are not asserting the

contested: negligence, gross negligence, and unjust enrichment.

## I.   NEGLIGENCE AND GROSS NEGLIGENCE

The Court is not persuaded that the negligence and gross negligence claims of the Remote Plaintiffs should go forward.  In its previous order the Court cited cases holding that a lender does not have a duty under negligence law to its customers.  *Davis*, 2013 WL 5488448, at *15 ("Federal district courts have generally rejected the existence of extra-contractual duties between a mortgagor and a mortgagee under Texas law.  The Court agrees that Texas law does not recognize an independent legal duty between a mortgagor and mortgage to support a negligence claim." (citing *Bassie v. Bank of Am., N.A.*, 2012 WL 6530482, at *5 (S.D. Tex. Dec. 13, 2012) (citing *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990)); *Escanlar v. Wells Fargo Bank, N.A.*, 2011 WL 1466279, at *5 (E.D. Tex. Mar. 28, 2011)); *see also Coleman*, 795 S.W.2d at 708–09 ("The Court has consistently held, however, that a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." (citations omitted)).  The Remote Plaintiffs have not convinced the Court of their counterintuitive position that Wells Fargo owed them a more significant duty of care than it owed its own customers.  *See generally Torrington*

---

following claims: Texas Debt Collection Act (TDCA); unreasonable collection efforts; wrongful foreclosure; fraud by nondisclosure; unjust enrichment; and negligent misrepresentation.  In addition, their conspiracy and aiding and abetting claims are derivative torts and thus fail absent an underlying tort claim.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).

*Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) ("Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances."). As support for their argument that the Court should conduct a risk–utility analysis to determine what duty—if any—they are owed by Wells Fargo, Plaintiffs cite to *Guerra v. Regions Bank*, 188 S.W.3d 744 (Tex. App.—Tyler 2006, no pet.). *Guerra* does not get them very far, however, given its holding that "[b]ecause he was not a Regions customer and had no other relationship with Regions, as a matter of law Regions owed [Guerra] no duty." *Id.* at 747.

And the Dallas Court of Appeals came to the same conclusion in *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655 (Tex. App.—Dallas 1996, no writ), *superseded by statute on other grounds as stated in Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800 (Tex. App.—Dallas 2006, no pet.). *Miller-Rogaska* was another case involving a non-customer bringing a negligence suit against a bank with which it had no other relationship. After noting this lack of a relationship—customer or otherwise—the court held that "Miller failed to produce any evidence establishing a legal duty owed to Miller by the banks," and affirmed the grant of summary judgment in the bank's favor. *Id.* at 664.

Finally, a Texas federal district court declined to impose a duty in a case involving similar allegations to those made here. In *Tomdra Investments, L.L.C. v.*

*CoStar Realty Information, Inc.*, a property owner sued a commercial real estate analytics firm for allegedly supplying false valuation information to an appraisal district, resulting in the owner's property being misvalued and having a tax lien levied against it. 735 F. Supp. 2d 528 (N.D. Tex. 2010). The court granted CoStar's motion to dismiss Tomdra's negligence claim, holding that Tomdra failed to establish that CoStar owed it a legal duty of care when it supplied this "market data" to the appraisal district. *Id.* at 533–34. Again, the court's reasoning hinged on the lack of a relationship between the defendant and the plaintiff sufficient to create a legal duty under Texas law.

This case is no different. Plaintiffs have failed to allege the existence of any relationship sufficient to impose a legal duty of care on Defendants for their market activities. The Court therefore **DENIES** Plaintiffs' Motion for Reconsideration (Docket Entry No. 50) and the negligence and gross negligence claims will remain **DISMISSED** for failure to state a claim.

## II.   UNJUST ENRICHMENT

Plaintiffs argue that Texas recognizes an independent cause of action for unjust enrichment, as opposed to merely recognizing unjust enrichment as a quasi-contractual theory of recovery. Texas law is murky on this point. *Compare* David Dittfurth, *Restitution in Texas: Civil Liability for Unjust Enrichment*, 54 S. Tex. L. Rev. 225, 226 (2012) ("[T]he Texas Supreme Court should establish an

independent and generally applicable cause of action for unjust enrichment."), *with* George P. Roach, *Unjust Enrichment in Texas: Is It a Floor Wax or a Dessert Topping?*, 65 Baylor L. Rev. 153, 253 (2013) ("Texas has a cause of action for unjust enrichment but it does not resemble traditional unjust enrichment in equity and therefore Texas has a weak safety net."). But even assuming that Texas does recognize unjust enrichment as a cause of action and not just a theory of recovery, the Court holds that the Remote Plaintiffs failed to adequately state such a claim.

The Texas Court of Appeals for Eastland neatly summarizes the state of unjust enrichment law in Texas:

> Unjust enrichment is an implied-contract theory stating one should make restitution when it would be unjust to retain benefits received. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). It is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).

*Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.). Unjust enrichment and restitution are interrelated concepts that help fill the remedial gaps outside contract and tort. *Cf.* RESTITUTION, Black's Law Dictionary (9th ed. 2009) ("A body of substantive law in which liability is based not on tort or contract but on the defendant's unjust

enrichment."). As the Supreme Court of Texas notes, "[u]njust enrichment claims are based on quasi-contract." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000) (citing Calamari et al., The Law of Contracts, § 1–12 (3d ed. 1987); 1 Williston, A Treatise on the Law of Contracts, § 1:6 (R. Lord ed., 4th ed. 1990)). "The simplest case of unjust enrichment liability is the mistaken payment. The plaintiff, thinking she owes the defendant $100, pays that amount, but in fact she does not owe anything. But the transfer takes effect as such, so that the defendant becomes the owner of the money." Lionel Smith, *Restitution: The Heart of Corrective Justice*, 79 Texas L. Rev. 2115, 2141 (2001) (footnote omitted). Furthermore,

> Unjust enrichment includes both a material gain by the defendant and a material loss by the plaintiff. Moreover, the loss and gain do not come together by random chance. They are two sides of the same coin—that coin being a transfer of wealth from plaintiff to defendant. There is a nexus of exchange between the parties.

*Id.* (footnote omitted).

That "nexus of exchange" is noticeably absent here. Plaintiffs allege only that Defendants were unjustly enriched—not that the Remote Plaintiffs were the source of this enrichment. But the claim fails under both sides of the equation. It is not plausible that the Defendants were enriched by the Remote Plaintiffs because Wells Fargo did not own a loan from these plaintiffs on which it could make a profit or receive land as the result of a default from which it could obtain the

alleged tax benefit that underlies Plaintiffs' liability theory.  Without some connection between Defendants' enrichment and the Remote Plaintiffs' loss—like that between the mortgage borrowers whose properties were later sold by Wells Fargo resulting in the alleged tax benefit to the bank[2]—this theory makes little sense and could apply to any market participant who receives some benefit from their market participation.  Would homeowners in a neighboring development also have an unjust enrichment claim against Defendants if they alleged that their home values plummeted as a result of the market manipulation scheme?  What about homeowners in the neighboring county?  This unbounded theory of liability proposed by Plaintiffs finds no support in unjust enrichment's history in quasi-contract or anywhere else.

---

[2] Plaintiffs may contend that such a connection exists because Wells Fargo benefitted from the general decline in real estate prices in the Sanctuary.  But Plaintiffs' allegations are that Wells Fargo was able to lower the prices by fraudulently convincing the appraisers to use only foreclosure sales as comparables and not consult general market values or non-foreclosure sales.  Thus it would be inconsistent with that theory to allege that Wells Fargo benefitted from a general decline in market values.

## III. CONCLUSION

For the reasons above, Defendants' Motion for Reconsideration (Docket Entry No. 51) is **GRANTED** and all claims of Plaintiffs Chris Stewart, Carl P. Holveck, James Monroe Powell, IV, Kristin Young Powell, and Dr. Francis and Tabe Mase are **DISMISSED WITH PREJUDICE** for failure to state a claim. Plaintiffs' Motion for Reconsideration (Docket Entry No. 50) is **DENIED**.

**SIGNED** this 14th day of February, 2014.

$\rule{2in}{0.4pt}$
Gregg Costa
United States District Judge